FILED

99 FEB -2 PM 3: 39

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

FEB -2 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BRENDA BAKER, as Administratrix of the Estate of Evan Baker, deceased,

    Plaintiff,

v.

TUSCALOOSA COUNTY BOARD OF EDUCATION, et al.,

    Defendants.

CIVIL ACTION NO.

CV-97-AR-1543-S

## MEMORANDUM OPINION

Presently before the court are several motions. First, defendant, Josh Adams ("Josh") and/or his next of kin, Anthony and Jetty Adams, moves for partial summary judgment on three of the four claims asserted against him by plaintiff, Brenda Baker ("Baker"). Second, defendants, Tuscaloosa County Board of Education ("the Board") and Dr. Joyce Sellers ("Sellers"), move for summary judgment on all claims asserted against them and move to strike certain evidence Baker filed in opposition to summary judgment. Third, defendants, Wayne McBride ("McBride") and Betty Trayvick ("Trayvick"), also move for summary judgment on all claims asserted against them and similarly move to strike certain evidence Baker filed in opposition to summary judgment. For the reasons hereinafter stated, all motions for summary judgment are due to be granted. Both motions to strike will become moot.

1

**Background**

This action was originally instituted by Evan Baker, ("Evan") a minor, by and through his next friend and mother, Brenda Baker ("Baker"). Evan was a student at Brookwood High School ("Brookwood") at the time of the events in question. Evan suffered from acute myelogenous leukemia and, sadly, died while this action was pending. After the resolution of several procedural disputes, Baker, as administratrix of Evan's estate, was permitted to substitute herself as plaintiff.

On the morning of February 10, 1997, Evan was assaulted by defendant, Josh Adams ("Josh"), also a minor. Josh and Evan were classmates. The allegedly unprovoked assault occurred during the students' "homeroom" period. Josh pushed Evan backwards in his chair, causing Evan to fall backwards and hit his head on the classroom floor. The fall allegedly rendered Evan unconscious. After Evan fell, Josh straddled Evan and continued to beat him about the face and head until Josh was pulled away from Evan. Defendant, Betty Trayvick ("Trayvick"), the homeroom teacher, ordered Josh to step away from Evan. Evan and Josh were eventually taken to the principal's office.

The principal of Brookwood High School, defendant Wayne McBride ("McBryde"), was out of his office that morning. Assistant principal Irene Byrd ("Byrd") was present when Evan was escorted into the principal's office.[1] Evan's face was cut, his head was bleeding, and his shirt was bloody. Byrd, the school bookkeeper, and the secretary

---

[1] Assistant Principal Irene Byrd is not a party to this action.

2

took Evan to the washroom to clean him up. Byrd also states that she brought Evan an ice pack for his face. Evan was unable to remember anything that had happened that day after he got off the schoolbus, but he was able to speak and give his phone number to Assistant Principal Robert Humphries ("Humphries").[2]

No professional medical attention was ever provided to Evan at the school. Brookwood High does not have a school nurse. The school relies on David Cunningham ("Cunningham"), a teacher with emergency medical training, for medical expertise. Byrd attempted to contact Cunningham, but learned that he was not at school that day. No arrangements had been made for emergency medical situations that might occur in Cunningham's absence. Humphries phoned Evan's parents, who left immediately for the school. Humphries did not ask Evan's parents if they wanted an ambulance called for Evan, and Byrd decided not to call an ambulance after learning that Evan's parents were en route.

Approximately twenty minutes later, Evan's parents arrived and took him to the hospital, where he remained under doctors' care for three to four hours. The following day, Evan was unable to walk or hold his head up. He was unable to keep food or water down. Eventually, Evan's eye began bleeding profusely and he was again taken to an emergency room. After additional testing, doctors discovered Evan had suffered a cracked sinus cavity and had spinal fluid on his brain, requiring brain surgery.

Several days before the assault that occurred on February 10,

---

[2] Assistant Principal Robert Humphries is not a party to this action.

3

Josh had been involved in another incident with Evan. A teacher brought Josh to the principal's office and informed Byrd that Josh had threatened another student and disobeyed the teacher's order to stop talking. Byrd issued a three day in-school suspension to Josh for talking in class and disobeying his teacher's instruction to stop. Byrd did not contact the parents of each student involved in the incident, as school policy requires when one student threatens another. In fact, Byrd did not even inquire as to the identity of the student threatened by Josh. Defendants McBride, Trayvick, Sellers, and the Board contend that they were unaware that Evan was the student Josh threatened on February 4 until after the assault of February 10.

Based on these events, Baker asserts various state law tort claims against all defendants. Federal jurisdiction rests on Baker's additional assertion of a violation of 42 U.S.C.§ 1983. Count II of Baker's complaint states, in pertinent part, that "[t]he actions of the Defendants . . . in both their official and individual capacities are violative of 42 U.S.C. Section 1983." Count II references no underlying substantive federal law.

The motions for summary judgment by defendants McBride, Trayvick, Sellers, and the Board seek dismissal of all claims Baker asserts against them, to wit, the § 1983 claim, the negligence claim, the claim for intentional infliction of emotional distress, and the claim for outrage. These defendants raise affirmative defenses of immunity as well as defenses on the merits. Defendant Josh seeks summary judgment on the § 1983 claim, as well as on Baker's claims for

4

intentional infliction of emotional distress and for outrage.[3]

## Discussion

This court has consistently declined to exercise pendent jurisdiction over state claims that accompany a claimed violation of federal law if and when the federal count is eliminated, that is, unless the elimination of the federal claim occurs at or near trial. For this reason, the court begins its analysis with an examination of Baker's single federal claim.

Section 1983 provides a means of redress for individuals who have been deprived, under color of state law, of rights secured by substantive federal law. Section 1983 does not provide a separate cause of action. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, *reh'g denied,* 473 U.S. 925, 106 S.Ct. 16 (1985). Because Baker references no underlying federal right in her § 1983 claim, this court is inclined to grant summary judgment to all defendants on Count II. *See Whiting v. Traylor*, 85 F.3d 581 (11th Cir. 1996).

If this court reads the submitted material in a light most favorable to Baker, the court might deduce that her § 1983 claim attempts to implicate rights allegedly secured by the Fifth, Eighth, and/or Fourteenth Amendments. In Count III, Baker claims that the Board, Sellers, McBride, and Trayvick violated the Eighth and

---

[3] Josh does not seek summary judgment on Baker's assault and battery claim.

Fourteenth Amendments by "negligently and wantonly maintaining an unsafe school environment" and that the Board violated the Fifth, Eighth, and Fourteenth Amendments by "fail[ing] to supervise its students in such a manner as to assure the safety of its students, including Evan Baker, endangering his life and well being." For the purposes of considering the motions for summary judgment, this court will *assume* that Baker has described with sufficient specificity an alleged violation of federal law underlying her § 1983 claim and will further assume, as all defendants have, that the claim refers to alleged violations of the Fifth, Eighth, and Fourteenth Amendments.

**Claim Against Josh**

For two reasons, Josh's motion for partial summary judgment is due to be granted. First, the vague references to the Fifth, Eighth, and Fourteenth Amendments made in Count III of Baker's complaint in no way implicate Josh. Because Baker makes absolutely no reference to Josh in any purported violations of substantive federal law, the court has no alternative but to conclude that Baker attempts to state a claim against Josh for violating § 1983. As stated above, § 1983 creates no substantive law.

Second, even if Baker had asserted that Josh violated substantive federal law, Josh clearly did not act under color of state law. Private parties are viewed as state actors only in very rare circumstances. Baker has put forth no evidence to demonstrate that any of these circumstances are present in this case. Baker has put forth

6

no evidence indicating that Josh was performing a public function, that state actors (including the school) encouraged or compelled Josh to act, or that Josh conspired with state actors (again including the school) to deprive Evan of his federal rights. *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (conspiracy is state action); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974) (private actors performing functions traditionally the exclusive province of the state act under color of state law); *Lowe v. Aldridge*, 958 F.2d 1565, 1573 (11th Cir. 1992) (private actors compelled or significantly encouraged by the state act under color of state law). Because any purported deprivation of which Baker complains did not occur under color of state law, Josh's motion will be granted.

**Claim Against Trayvick**

Defendant Trayvick is also entitled to summary judgment because Baker has produced neither evidence nor argument alleging that Trayvick violated a federal right to which Evan was allegedly entitled. Such an allegation is absent from Baker's complaint as well as her brief in opposition to summary judgment. Indeed, the only place Trayvick's name appears in Baker's brief is in the paragraphs recounting Josh's assault on Evan. Because Baker has failed to demonstrate the existence of a genuine issue of material fact with respect to Trayvick's liability on a § 1983 claim, Trayvick's motion for summary judgment is due to be

granted.[4]

**Claim Against Remaining Defendants**

In opposition to summary judgment, Baker argues that Evan had a constitutional right to safe schools, which the remaining defendants failed to provide. Baker cites cases from various jurisdictions to support her contention. Baker appears to argue that this right derives from the constitutional guaranty of due process before a state may deprive an individual of life, liberty, and happiness. After careful consideration, this court concludes that the remaining defendants' motions for summary judgment are due to be granted with respect to Baker's § 1983 claim because the remaining individual defendants are qualifiedly immune to suit brought against them in their individual capacities, and, in any event, because Baker fails to present a genuine issue of material fact to indicate that Evan had a constitutional right to safe schools.

The doctrine of qualified immunity protects the individual defendants from being sued for money damages under § 1983 in their individual capacities. Qualified immunity exists if Baker fails to show either (1) that defendants violated one of Evan's federally protected rights or (2) that the federal right defendants violated was established with sufficient clarity so that *any* government actor would know that what he or she is doing violates federal law. *See Lassiter*

---

[4] Even if the court did not grant Trayvick's motion for summary judgment on these grounds, Trayvick would be entitled to summary judgment for the same reasons as defendants McBride, Sellers, and the Board.

v. *Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (*en banc*). Despite the approach suggested by the United States Supreme Court in *Siegert v. Gilley*, 500 U.S. 226, 111 S.C. 1789, *reh'g denied*, 501 U.S. 1265, 111 S.Ct. 2920 (1991), the Eleventh Circuit continues to focus on the clarity with which the right is established rather than to determine whether a right existed at all.[5] See *Spivey v. Elliott*, 41 F.3d 1497, 1498-99 (11th Cir. 1995) (vacating earlier opinion that decided existence of right before deciding whether right was clearly established). This case presents the rare situation, however, of an instance in which both the Eleventh Circuit and the Supreme Court *have* addressed the existence of the constitutional right at issue and has concluded that such a right does not exist. In this case, defendants escape liability because they are qualifiedly immune, and the precedent that makes them qualifiedly immune also precludes liability on the merits of Baker's claim.

In *DeShaney v. Winnebago County Dep't. of Soc. Servs.*, the United States Supreme Court made clear that the state has no duty to protect individual members of the public from harms inflicted by private

---

[5] In *Siegert*, the Supreme Court explained that a "better approach" would be to first determine whether a statutory or constitutional right is indeed implicated and then inquire whether that right was clearly established at the time of the events at issue. The Eleventh Circuit has expressed its view that the Supreme Court merely made a "suggestion" in *Siegert*. To avoid the constitutional question, the Eleventh Circuit inquires as to whether the right was clearly established at the time of the alleged violation. Because the Eleventh Circuit has explained that the law is "clearly established" primarily through Eleventh Circuit precedent (as opposed to district court decisions from the relevant jurisdiction or appellate decisions from other circuits), however, the refusal of the Eleventh Circuit to consider the existence of the underlying federal right begs the question of how any right is to become "clearly established?"

9

parties unless the state has affirmatively acted to create a "special relationship" with the individual. 489 U.S. 189, 198, 200-201, 109 S.Ct. 998 (1989)). Even before *DeShaney*, however, the Eleventh Circuit had held that the state had no constitutional duty to protect members of the general public from random criminal violence except in situations in which a special relationship exists. *See, e.g., Jones v. Phyfer*, 761 F.2d 642, 646 (11th Cir. 1985); *Wright v. City of Ozark*, 715 F.2d 1513, 1515 (11th Cir. 1983). The Eleventh Circuit has explained the "special relationship" exception as follows:

if the state takes a person into custody or otherwise assumes responsibility for that person's welfare, a "special relationship" may be created in respect of that person, and the fourteenth amendment imposes a concomitant duty on the state to assume some measure of responsibility for the person's safety and well-being.

*Wideman v. Shallowford Community Hosp., Inc.*, 826 F.2d 1030, 1035 (11th Cir. 1987) (quoting *Estate of Gilmore*, 787 F.2d 714, 721 (1st Cir.), *cert. denied*, 479 U.S. 882 (1986)).

Applying these principles to the facts of this case, it is apparent that the due process clause does not oblige the remaining defendants to protect Evan from harm inflicted by Josh unless the remaining defendants had a special relationship with Evan. *See DeShaney*, 489 U.S. at 198, 200-201; *Phyfer*, 761 F.2d at 646; *Wright*, 715 F.2d at 1515. Baker submits two bases on which this court could find the existence of a special relationship. The court rejects both.

First, Baker contends that Alabama's compulsory education laws create a special relationship that obligated the school administration defendants to protect Evan from harms inflicted by private third

10

parties. The Eleventh Circuit has unequivocally rejected this argument. *See Wyke v. Polk County School Bd.*, 129 F.3d 560, 569 (11th Cir. 1997), *cert. question withdrawn*, 137 F.3d 1292 (1998); *Russell v. Fannin County School Dist.*, 784 F. Supp. 1576, 1582-83 (11th Cir. 1992), *aff'd without opinion*, 981 F.2d 1263; *see also Spivey v. Elliott,* 41 F.3d 1497, 1499 (11th Cir. 1995). In *Wyke v. Polk County School Bd.*, the Eleventh Circuit expressly concluded that compulsory school attendance laws alone are not a restraint of personal liberty sufficient to give rise to an affirmative duty of protection. 129 F.3d at 569. In *Russell*, a decision from the Northern District of Georgia affirmed without opinion, the district court explained that compulsory school attendance laws do not render a child unable to care for basic human needs, nor do they "place a child in a worse situation or in a position of danger. . . . By mandating school attendance for children, the state . . . has not assumed responsibility for their entire personal lives; these children and their parents retain substantial freedom to act." 784 F. Supp. at 1582-83. Baker's contention that compulsory attendance laws create a special relationship with students therefore fails as a matter of law.

As an alternative basis for finding the existence of a special relationship, Baker takes up a theory alluded to in *Russell* and seen in cases from other jurisdictions: the possibility of a special relationship arising when a state's actions place an individual in danger. *See id; Wood v. Ostrander*, 879 F.2d 583, 588-89 (9th Cir. 1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341 (1990) (state trooper

11

arrests driver and impounds vehicle in which plaintiff was a passenger, then left plaintiff by roadside, where she was subsequently raped). Baker argues that McBride, Sellers, and the Board affirmatively made Evan more vulnerable to harm by failing to separate Evan and Josh after Josh threatened Evan and by failing to place Josh in special education classes where he could receive "anger management." With respect to her first contention, Baker has produced no evidence to indicate that any of the remaining named defendants had notice of the February 4 incident prior to February 10. With regard to her second contention, the parties dispute whether the school defendants had the authority, prior to February 10, to place Josh in special education classes.[6]

Even were the court to overlook Baker's failure to produce evidence regarding the remaining defendants' prior knowledge of the February 4 incident, and even if the court assumes that the remaining defendants had the authority to place Josh in special education classes, the remaining defendants are still entitled to summary judgment because the Eleventh Circuit has rejected the "more vulnerable to harm" theory in cases involving strikingly similar facts. *See Wyke*, 129 F.3d at 570; *Russell*, 784 F. Supp. at 1580.

In *Russell*, a case involving virtually identical facts, a student was attacked by a fellow student and sustained serious injuries. *See*

---

[6] The remaining defendants contend that they had requested Josh's parents' consent to place him in special education classes but that they had not yet obtained consent on February 10. Baker contends that Josh's file contains a note from Josh's parents requesting that Josh be placed in special education classes. The note is not dated.

*Russell*, 784 F. Supp. at 1580. The school officials were aware that the two students had exchanged words several days before the attack, but did nothing to separate the students and did not inform the parents. *Id.* Plaintiff argued that the defective customs and policies of the defendant school officials failed to prevent fighting in the school and were the primary cause of their son's injuries. In granting summary judgment, the district court explained "*DeShaney* stands for the harsh proposition that even when state officials know that a person is in imminent harm from a third party, the Fourth Amendment (through the Fourteenth Amendment) imposes upon those state officials no obligation to prevent that harm." *Id.* at 1581 (citing *DeShaney,* 489 U.S. at 200-201).

In another case involving similar, but not identical, facts, the Eleventh Circuit again rejected the notion that the defendant school officials had a duty to protect a student because the actions of the officials made the student more vulnerable to harm. *See Wyke*, 129 F.3d at 570. In *Wyke*, a high school student committed suicide at home after two in-school attempts failed. The defendant school officials were aware of the student's in-school suicide attempts but did not call the student's parents. One school official received notice of the student's first attempt via a phone call from a witness's mother. The mother testified that she would have contacted the student's parents herself, but the official assured her that the school would "take care of it." *See id.* Even in these circumstances, the Eleventh Circuit concluded that the school officials had no constitutional duty to protect the student.

13

*See id.* Baker's last argument therefore fails to present an genuine issue of material fact indicating that the school had a special relationship with Evan giving rise to a duty obligating the remaining defendants to protect him from the harm inflicted by Josh.

This is a case in which plaintiff's federal theory of obligation by defendants is defective. Thus the qualified immunity defense of the individual defendants is, in reality, a redundancy.

**Conclusion**

Baker's federal claim does not implicate defendants Josh or Trayvick in any way, nor is Josh a state actor. These defendants' motions for summary judgment are therefore due to be granted without prejudice to the state tort claims.

With respect to the remaining defendants, existing Eleventh Circuit precedent makes clear that these defendants are entitled to qualified immunity and that Baker's claim fails on the merits.

Though this case presents a tragic set of circumstances, it does not present a situation for which § 1983 provides a remedy. The only basis for federal jurisdiction having been removed from the case, the court will decline to retain jurisdiction over Baker's state claims. An appropriate separate order granting defendants' motions for summary judgment will be entered.

DONE this 2nd day of February, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

14